
George C. Paine, II
US Bankruptcy Judge
Dated: 01/05/09



# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| In Re: | ) | |
| MUSIC CITY RV, LLC, | ) | CASE NO. 08-07724 |
| | ) | CHAPTER 7 |
| Debtor | ) | JUDGE GEORGE C. PAINE, II |
| | ) | |
| ROBERT H. WALDSCHMIDT, TRUSTEE, | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | ADV. PROC. NO. 08-0371A |
| | ) | |
| JENNIE ADAMS, JONATHAN C. ASHCRAFT, DALE DELCAMP, CURTIS HUNTER, WILLIAM JENNINGS, PATRICK KENNEDY, DUDLEY KING, CHARLES KLEMENTOVICH, RICK NORTHERN, GARY REID, | ) | |

## MEMORANDUM

This matter is before the court on the partial summary judgment motions of the Chapter 7 trustee and defendant, Dudley King.[1] At issue is whether the

---

[1] The trustee's motion sought a ruling as to the following defendants: Jonathan C. Ashcraft, Dale Delcamp, Curtis Hunter, William Jennings, Patrick Kennedy, Dudley King, Charles Klementovich, Rick Northern, and Gary Reid. Only Mr. King filed a brief with facts specific to his case, but the other defendants were "riding his coattails" to seek a determination of the strictly legal issues. As such, the outcome of the certification of his case will therefore be the "law of the case" for all

Case 3:08-ap-00371   Doc 35   Filed 01/07/09   Entered 01/07/09 14:31:28   Desc Main
Document      Page 1 of 5

defendants' consigned vehicles on the lot of the debtor, Music City RV, LLC ("MCRV") are property of the estate.[2] For the reasons cited herein, the court certifies to the Tennessee Supreme Court a discreet question of law for determination pursuant to Rule 23 of the Rules of the Supreme Court of the State of Tennessee.

For purposes of this hearing, the parties stipulated that:

A. MCRV was not primarily engaged in the business of selling consigned vehicles.

B. MCRV was a merchant as defined under UCC §9-102(20).

C. The Defendants turned their vehicles over to MCRV for the purposes of consignment and not for some other purpose.

D. Each vehicle was on the premises at the time of the filing of the bankruptcy.

E. MCRV performed the services of a consignee.

F. There was no agreement between any of the Defendants and MCRV concerning a designation of the consignment as "sale on approval" or

---

of the defendants.

[2] The facts unique to Mr. King's case were undisputed. Dudley ("Red") Wyatt King Sr., a resident of Cheatham County, Tennessee, is a retired plumber born March 12, 1932. On July 19, 2004 he purchased a used 1999 Newmar Kountry Star recreation vehicle for Seventy Four Thousand dollars. In July 2008, needing money to help subsidize his social security income, he decided to sell his RV.

On July 1, 2008 he entered into a consignment agreement for a period of three months (July 1st – October 1st) in which Mr. King was to receive thirty-seven-thousand dollars from the sale of the vehicle. The RV was placed on the MCRV lot on July 8, 2008. An involuntary chapter 7 petition was filed against MCRV on August 28, 2008.

"sale or return".

No UCC-1 financing statements were filed. The Trustee has asserted that the rights of the Defendant (as an unperfected consignor) are subordinate to the rights of perfected lien creditors, and the Trustee, as a judicial lien creditor under 11 U.S.C. §544. Mr. King contends that his RV was a consumer good, not part of MCRV's inventory, and therefore, not property of the estate under any legal theory proffered by the trustee.

At the Pretrial Conference on November 17, 2008, the Court selected five issues from those outlined in the Pretrial Statement, and the parties agreed that an early decision on those legal issues might be dispositive of much of this case. Therefore, the Court ordered the parties to file briefs on those issues, and set those issues for hearing on December 30, 2008. The five issues are:

1. Whether the vehicles were inventory of the Debtor?

2. Whether the vehicles are "consumer goods" under UCC §9-102(23)?

3. Whether the recent revisions to the UCC took these type of consignments (referred to by one Defendant as an "Orphan consignment") out of the scope of Article 9?

4. Whether the transfer of the goods to the debtor was a "sale or return" transaction under revised Article 2 of the UCC. [§47-2-326(1)(b)]?

5. If the UCC does not apply, then whether the priority between the parties

is determined pursuant to non-Code common law, or some other statutory law?

Resolution of all of the legal issues presented rests primarily on what law the court should apply regarding consignments. The defendant posits:

> The Uniform Commercial Code (UCC) under went a revision in Tennessee (and nationwide) in 2001. One significant (and controlling in this case) change was the removal of consignment transactions from Article 2 (Sales) and its placement into Article 9 (Secured Transactions). The reasoning behind this change is simple, the revisors recognized that a true consignment is not a sale at all to the consignee and does not belong in the Sales Chapter. A consignment belongs in the Secured Transactions chapter when it is used as a device to finance inventory. When it is a consumer goods transaction as in this case, the UCC does not apply.

The trustee, on the other hand, argues that:

> The Uniform Commercial Code has always dealt with consignments as sales under §2-326. Under §2-326(b) goods that are held on a "sale or return" basis are deemed to be subject to the claims of creditors, and hence, the priority scheme set forth in Article 9 (dealing with perfections of interests) applied. However, the revisions to the UCC added provisions into Article 9, dealing with consignments. One of the purposes of the revisions of the UCC was to cover some (but not all) of the consignment issues directly under Article 9. . . However, these revisions did not remove all consignment situations from Article 2, because the definition of "consignment" in §9-102(20) is restrictive, and does not cover all forms of consignments. In situations where a transaction does not fit within that definition, the former provisions of §2-326 still apply.

There is no relevant Tennessee law discussing how consignments that do not fit within the new Article 9 definition should be treated. Do such consignments fall back under Article 2, as argued by the trustee, or do the parties refer to state

common law, as argued by the defendant?  Resolution of that issue will resolve most, if not all, of the remaining issues in the adversary proceeding.  On that basis the court, therefore, certifies to the Tennessee Supreme Court the issue of "orphan consignments" following the UCC revisions that removed some, and possibly all, consignments from Article 2.

The court will enter an Order contemporaneously herewith this Memorandum Opinion.

**THIS MEMORANDUM WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**

5-U.S. Bankruptcy Court, M.D. Tenn.

This Order has Been electronically signed.  The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.

Case 3:08-ap-00371    Doc 35    Filed 01/07/09    Entered 01/07/09 14:31:28    Desc Main
Document      Page 5 of 5